UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOUGLAS A. JANESE, et al.,

                              Plaintiffs,

                 -vs-                                        09-CV-593C

DAVID A. FAY, et al.,

                              Defendants.

_____

APPEARANCES:    DAVID B. HERRMANN, JR., ESQ., Williamsville, New York,
                Attorney for Plaintiffs.

                LIPSITZ GREEN SCIME CAMBRIA LLP (ROBERT L. BOREANAZ,
                ESQ., of Counsel), Buffalo, New York, Attorneys for Defendant.


        This action was filed on June 26, 2009, by three present and/or former participants

and beneficiaries of the Niagara-Genesee & Vicinity Carpenters Local 280 Pension Fund

and the Niagara-Genesee & Vicinity Carpenters Local 280 Welfare Fund (collectively, the

"Local 280 Funds" or the "Funds")[1] seeking declaratory, injunctive, and monetary relief

against twelve former Trustees and two former Plan Managers of the Funds for breach of

fiduciary duties in violation of Sections 502(a)(2) and (a)(3) of the Employee Retirement

Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132(a)(2) and (a)(3).

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure for failure to state a claim upon which relief can be granted (*see*

Item 10).

_____

        [1]The Local 280 Funds merged into the Empire State Carpenters Pension and Welfare
Funds, effective January 1, 2008.  *See* Item 1, ¶ 2.

**BACKGROUND**

As alleged in the complaint, this is a "derivative action" brought by plaintiffs Douglas Janese, Christopher Shakarjian, and Louis D'Aurizio on behalf of the participants and beneficiaries of the Local 280 Funds to recover assets alleged to have been wrongfully depleted as the result of various fiduciary breaches on the part of twelve individual former Trustees and two former Plan Managers between November 1993 and December 2007. Many of these same individuals, both plaintiffs and defendants, were named as parties in a previous lawsuit in this court, *LaScala, et al. v. Scrufari, et al.*, No. 93-CV-982 (JTC), involving claims of breach of fiduciary duty under ERISA based in substantial part upon conduct and circumstances which form the basis for the allegations in the complaint in this action. *See LaScala v. Scrufari*, 2006 WL 469404 (W.D.N.Y. Feb. 27, 2006), *rev'd*, 479 F.3d 213 (2d Cir. 2007), *on remand to* 2010 WL 475284 (W.D.N.Y. Feb 5, 2010).[2]

In their complaint, plaintiffs have pleaded a total of fourteen causes of action in nine counts against the former Trustees and Plan Managers of the Funds. The Trustees are identified as members of four separate Trustee groups, as follows:

1.  Trustees for the period July 13, 2006[3] through December 31, 2007 (referred to by plaintiffs as the "2006-2008 Trustees"), identified as David A. Fay, Angelo Massaro. Dominic P. Massaro, George R. Weidert, Christopher M. Scrufari, David J. Knapp, Thomas P. Hartz, John J. Fuchs, Patrick Morin, and John J. Simmons.

---

[2]Specifically, plaintiffs Douglas Janese and Christopher Sharkarjian were named as plaintiffs in No. 93-CV-982, and defendants David Fay, Angelo Massaro, Dominic Massaro, George Weidert, Christopher Scrufari, Santo Scrufari, David Knapp, Thomas Hartz, and Robert Williams were named as defendants in No. 93-CV-982.

[3]The court will assume for the purposes of congruity that the beginning service date for this group of Trustees was misidentified in the complaint as July 13, 2000 (Item 1, ¶ 14).

2. Trustees for the period January 26, 1999 through July 12, 2000 (the "2000 Trustees"), identified as Mr. Fay, Mr. Weidert, Mr. Hartz, Angelo and Dominic Massaro, Robert P. Williams, Christopher Scrufari, David Knapp, and Gordon J. Knapp.

3. Trustees for the period January 20, 1994 through January 25, 1999 (the "1994-1998 Trustees"), identified as Fay, Weidert, Williams, Angelo and Dominic Massaro, Christopher Scrufari, David Knapp, and Gordon Knapp.

4. Trustees for the period November 1993 through January 19, 1994 (the "December 1993 Trustees"), identified as Gordon Knapp, Fay, Angelo and Dominic Massaro, Weidert, and Hartz.

Item 1, ¶¶ 14-17. The two Plan Managers are identified as Santo S. Scrufari, who served from March 1985 through July 14, 1996, and his immediate successor (and son), Russell P. Scrufari, who served through December 31, 2008.

In Count I of the complaint, plaintiffs allege that the 2006-2008 Trustees breached their fiduciary duty of loyalty to active Pension Plan participants and Welfare Fund beneficiaries by twice reducing future benefit accruals to address approximately $27 million in "unfunded accrued liability"[4] resulting from retroactive benefit increases which were previously adopted by the 1994-1998 Trustees. As set forth in the complaint, the first reduction of future accruals took place effective July 1, 2004, and the second took place effective July 1, 2006, ultimately resulting in the reduction of the active participants' monthly benefit rate for years of credited service from $113.40 to $50.00. Plaintiffs claim

---

[4]The term "unfunded accrued liability" is defined in ERISA as "the excess of the accrued liability, under an actuarial cost method which so provides, over the present value of the assets of a pension plan." 29 U.S.C. § 1002(30).

The term "accrued liability" is defined as "the excess of the present value, as of a particular valuation date of a pension plan, of the projected future benefit costs and administrative expenses for all plan participants and beneficiaries over the present value of future contributions for the normal cost of all applicable plan participants and beneficiaries." 29 U.S.C. § 1002(29).

-3-

that since the funding deficiency which necessitated the reductions in future benefit accruals was the direct result of the actions taken by the 1994-1998 Trustees, the 2006-2008 Trustees should have prospectively reduced benefits then being paid to retirees instead of reducing the value of the pension benefits to be paid in the future to active Plan participants. Plaintiffs also allege that "[t]he 2006-2008 Trustees and their predecessors fraudulently concealed this developing funding problem, or at least the magnitude and cause thereof, from the Plan's participants and beneficiaries." Item 1, ¶ 24.

Count II more directly addresses the retroactive monthly benefit rate increases adopted by the 1994-1998 Trustees. Plaintiffs allege that, by increasing the rates five times between May 12, 1994 and August 13, 1998, the Trustees greatly enhanced the benefits being paid out to the older active Plan participants (including the Trustees themselves and the Plan Manager, Santo Scrufari) to the detriment of younger participants (including plaintiffs). According to the complaint, these actions on the part of the Trustees and Santo Scrufari constitute a breach of the fiduciary duty to preserve the Fund's assets to satisfy future pension claims, as well as the duty to take impartial account of the interests of all participants and beneficiaries of the Plan. *See id.* at ¶¶ 32-41.

In Count III, plaintiffs allege breach of fiduciary duty on the part of the December 1993 Trustees as the result of actions taken at a "secret meeting" held on December 31, 1993, which allowed previously adopted benefit increases to become effective one year earlier in order to enhance the pension of retired Plan participant Arthur Marinucci (a relative of Angelo and Dominic Massaro). Plaintiffs further allege that the 1993 Trustees fraudulently concealed this action by failing to provide notice or explanation under ERISA's reporting and disclosure requirements. *See id.* at ¶¶ 44-52.

In Count IV, plaintiffs allege that the 1994-1998 Trustees breached their fiduciary duty by voting at a meeting on November 12, 1998 to approve a one-time "break in service forgiveness rule," which resulted in the restoration of 4.8 years of credited service to defendant Gordon Knapp, and fraudulently concealed this approval by failing to provide notice or explanation under ERISA's reporting and disclosure requirements. *See id.* at ¶¶ 53-59.

In Count V, plaintiffs allege that the 2000 Trustees breached their fiduciary duty by voting at a meeting on May 18, 2000 to approve an alternative service eligibility rule specifically designed to benefit defendant David Fay. *See id.* at 60-63.

In Count VI, plaintiffs allege that at some unspecified time prior to January 1, 2008, the 2006-2008 Trustees breached their fiduciary duty by authorizing an *ad hoc* increase of Mr. Fay's monthly retirement benefit, and fraudulently concealed this action by failing to provide notice or explanation under ERISA's reporting and disclosure requirements. *See id.* at ¶¶ 64-66.

In Count VII, plaintiffs allege that for a number of years during his tenure as Plan Manager through July 14, 1996, Santo Scrufari fraudulently "weighted" his and Gordon Knapp's pension benefit accruals, and concealed this action by altering his and Knapp's pension credit records. *See id.* at ¶¶ 67-70.

In Count VIII, plaintiffs allege breach of fiduciary duty on the part of Santo Scrufari based on his withdrawal of unauthorized Welfare Fund benefits when he retired as Plan Manager in 1996, and then concealed these withdrawals by reporting them as "Scholarship" or Health Care" benefits (for which he was not eligible). Plaintiffs further

allege that Russell Scrufari and the 1994-1998 Trustees breached their fiduciary duties by approving these withdrawals. *See id.* at ¶¶ 71-77.

Finally, plaintiffs allege in Count IX that Russell Scrufari expanded this "Scholarship Benefits fraud" scheme to provide unauthorized Welfare Fund benefits to defendant Gordon Knapp and others, and that this scheme was approved by the 1994-1998 Trustees, and later by the 2000 Trustees. *See id.* at ¶¶ 78-84.

Defendants have moved pursuant to Rule 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted, based on the following grounds:

1.      Plaintiffs have failed to allege that they adequately represent the interests of other plan participants and beneficiaries, as required for a derivative action brought under ERISA.

2.      The conduct complained of in Counts I through V on the part of the various trustee groups–amendment of a pension plan–is not an exercise of fiduciary duty actionable under ERISA.

3.      The claims alleged in Counts I through V and Counts VII through IX are barred by the statute of limitations applicable to actions seeking relief for breach of fiduciary duty under ERISA.

4.      The facts alleged in Count VI fail to state a plausible claim for relief under ERISA.

5.      The Empire State Carpenters Funds are not proper defendants.

Each of these grounds is discussed in turn.

## DISCUSSION

### A.    Rule 12(b)(6)

A Rule 12(b)(6) motion calls upon the court to examine the legal sufficiency of the claims alleged in the complaint, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.

### B.    Adequate Representation

The initial argument raised by defendants in their motion to dismiss is that plaintiffs have failed to plead any facts to indicate they have satisfied the procedural requirements for bringing a derivative action under ERISA section 502(a)(2). That section authorizes an action for breach of fiduciary duty to be brought by a plan participant or beneficiary "in a representative capacity on behalf of the plan as a whole." *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). As noted by the Second Circuit, "the representative nature of the section 502(a)(2) right of action implies that plan participants must employ procedures to protect effectively the interests they purport to represent." *Coan v. Kaufman*, 457 F.3d 250, 259 (2d Cir. 2006).

*Coan* involved a claim brought under ERISA section 502(a)(2) by an individual participant in a defunct 401(k) retirement plan seeking damages and restitution individually and on behalf of the plan for breach of fiduciary by plan trustees based on allegedly imprudent investment decisions. The district court granted the defendant trustees' motion for summary judgment, finding that the plaintiff had failed to take any procedural steps during the course of the litigation to ensure the court that the interests of absent former participants in the plan would be protected and that any potential recovery would benefit the plan and not just the individual plaintiff. *Coan v. Kaufman*, 333 F. Supp. 2d 14, 24-25 (D.Conn.) (*Coan I*), *adhered to on reconsideration*, 349 F. Supp. 2d 271 (D.Conn. 2004) (*Coan II*). The court based this determination on three alternative grounds: (1) Second Circuit precedent requires plaintiffs bringing a section 502(a)(2) action in a representative capacity to comply with the procedures set forth in Fed. R. Civ. P. 23.1 for bringing a shareholder derivative suit; (2) even if plaintiffs bringing suit under section 502(a)(2) are not strictly required to follow Rule 23.1, they must "have made at least some effort to comply with the 'general principles' that apply in shareholder derivative actions." *Coan II*, 349 F. Supp. 2d at 275 (quoting Charles A. Wright, *The Law of Federal Courts* § 73, at 525 (5th ed.1994)); (3) the plaintiff's "failure to do *anything* to demonstrate that her action actually was intended to benefit former plan participants other than [plaintiff herself] . . . rendered specious [her] claim to be acting on behalf of others." *Id*. at 277 (internal quotation marks omitted).

The Second Circuit affirmed, "based on the third ground." 457 F.3d at 257. In the circuit court's view, the "unusual" nature of the breach of fiduciary duty cause of action

authorized by section 502(a)(2), which "differs significantly from [claims] traditionally asserted in shareholder derivative suits . . . ," *id.* at 258 (internal quotation marks and citation omitted), made it inappropriate to require plaintiffs seeking relief on behalf of an ERISA plan to comply with either the specific procedural requirements of Rule 23.1 or any "general principles of procedure that control derivative actions." *Id.* at 259. However, the court agreed with the district court's ultimate conclusion that an action cannot be brought under section 502(a)(2) "in a 'representative capacity on behalf of the plan' if the plaintiff does not take any steps to become a bona fide representative of other interested parties." *Id.* at 259 (quoting *Russell*, 473 U.S. at 142 n.9).

The Second Circuit stopped short of "delineat[ing] minimum procedural safeguards that section 502(a)(2) requires in all cases." *Id.* at 261. Noting the absence of any specific procedural requirements in the statute, notwithstanding legislative history indicating that Congress considered both mandatory and permissive imposition of class action requirements, the court stated:

> [I]n our view, although plan participants need not always comply with [the requirements for pleading a class action under Fed. R. Civ. P. 23] to act as a representative of other plan participants or beneficiaries, those who do will likely be proceeding in a "representative capacity" properly for purposes of section 502(a)(2). Similarly, a plan participant who joins or makes a good-faith effort to join other participants as parties pursuant to [Fed. R. Civ. P. 19] would seem to have discharged his or her duty to proceed on behalf of the plan. Ultimately, however, the requirement is only that the plaintiff take adequate steps under the circumstances properly to act in a "representative capacity on behalf of the plan."

*Id.* (quoting *Russell*, 473 U.S. at 142 n. 9).

Plaintiffs do not forcefully dispute that the complaint lacks any allegations to indicate compliance with the pleading requirements of Rule 23 or the joinder requirements of

-9-

Rule 19, or to suggest that they have taken any other procedural steps to adequately safeguard the interests of other plan participants under the circumstances presented by this lawsuit. However, as plaintiffs correctly point out, of primary concern to the Second Circuit in the *Coan* decision was the prospect of fashioning a remedy to ensure a recovery for the benefit of the plan as a whole, rather than just for the benefit of the individual plaintiff, "without a great deal of improvisation, effort, and expense" on the part of the court to resuscitate a defunct 401(k), restore funds to it, locate participants, and recalculate and redistribute their entitlements." *Id.* at 262. These concerns are not significant–if present at all–in a suit such as this one, brought on behalf of a currently viable pension plan where any amounts recovered as damages would be returned to the general asset pool to benefit the financial integrity of the plan as a whole.

In addition, while noting in *Coan II* that the plaintiff's request for an opportunity to cure the procedural defects came "far too late in the day" to justify granting leave to amend the complaint, the district court also noted that "such a request would certainly have been proper at an earlier stage of [the] proceeding . . . ." *Coan II*, 349 F. Supp. 2d at 277 n. 9; *see also* 457 F.3d at 262. Although no formal motion for leave to amend the complaint has been made in this case, the litigation is still at the earliest pleading stage, and the same concerns of timeliness of significance to the court in *Coan* are not present here.

Accordingly, the court does not presently find itself in the position to rule that plaintiffs cannot plausibly state any claim for relief under ERISA section 502(a)(2) containing adequate procedural safeguards to ensure that the action is being brought properly in a representative capacity for the benefit of the plan as a whole.

**C.    Amendment of Plan as Fiduciary Duty**

Defendants also move to dismiss the claims asserted in Counts I through V of the complaint on the ground that the conduct alleged in those claims–amendment of the plan to adopt changes in the amount of benefits paid to participants–is not an exercise of fiduciary duty actionable under ERISA.  According to defendants, the Supreme Court's holdings in *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); and *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), as universally applied in subsequent lower court decisions, have established as a matter of law that trustees do not act as fiduciaries within the meaning of ERISA when adopting amendments to a plan.

In *Burke v. Bodewes*, 250 F. Supp. 2d 262 (W.D.N.Y. 2003), this court considered–and rejected–a similar argument made by former trustees of the Buffalo Carpenters Pension Fund which, like the Local 280 Funds central to this case, was a multi-employer plan.[5]  In this court's view, the Supreme Court's *Curtiss-Wright*, *Lockheed*, and *Hughes* decisions, which involved single-employer plans, did not alter the controlling rationale of Second Circuit case law that amendments to multi-employer plans which "affect the allocation of a finite asset pool to which each participating employer has contributed" could properly be treated as fiduciary functions.  *Siskind v. Sperry Retirement Program*, 47 F.3d 498, 506 (2d Cir. 1995), *quoted in Burke*, 250 F. Supp. 2d at 270; *see*

---

[5]ERISA defines "multiemployer plan" as a plan "to which more than one employer is required to contribute, [and] . . . which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer . . . ."  29 U.S.C. § 1002(37)(A)(I), (ii).

*also Chambless v. Masters, Mates & Pilots Pension Plan*, 772 F. 2d 1032, 1040 (2d Cir. 1985). The court also determined that the "overall thrust" of the complaint in *Burke* was not that the trustees amended the "form or structure" of the pension benefit program, of concern to the Supreme Court in *Curtiss-Wright*, *Lockheed*, and *Hughes*, "but rather that the plan was amended to provide increased benefits to plan participants without considering the effect of those amendments on the financial integrity of the Fund or on already-accrued pension benefits." *Burke*, 250 F. Supp. 2d at 270.

Defendants contend that the court should reconsider this rationale in light of holdings in cases decided subsequent to *Burke* which have called its continuing viability into question. The court has reviewed these cases, and finds no persuasive authority to suggest that controlling Second Circuit law no longer recognizes fiduciary liability under ERISA for the financial consequences of amendments to multi-employer pension plans. *Id.*

Accordingly, the court denies defendant's request for a ruling in this case that, as a matter of law and contrary to the holding in *Burke*, that the conduct alleged in Counts I through V regarding the various trustee groups' adoption of plan amendments affecting the amount of benefits paid to participants does not give rise to liability for breach of fiduciary duty under ERISA as a matter of law.

**D.      Statute of Limitations for Breach of Fiduciary Duty Under ERISA**

A motion to dismiss on the basis that a claim is barred by the applicable statute of limitations  is properly brought under Fed. R. Civ. P. 12(b)(6) as a motion to dismiss for failure to state a claim upon which relief can be granted. *See Garner v. DII Industries,*

*LLC*, 2010 WL 456801, at *1 (W.D.N.Y. Feb. 4, 2010) (citing *Ghartey v. St John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). The statute of limitations is an affirmative defense on which the defendant bears the burden of proof. *See* Fed. R. Civ. P. 8(c); *Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*, 2010 WL 1838730, at *2 (S.D.N.Y. May 4, 2010) (citing *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995). Thus, while a court may grant a motion to dismiss on statute of limitations grounds if the complaint, on its face, "clearly shows the claim is out of time," *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir. 1999), survival of a Rule 12(b)(6) motion "requires only allegations consistent with a claim that would not be time-barred." *Id*. at 251.

By virtue of the present motion, the court is once again compelled to apply the "enigmatic–almost chimerical–statute of limitations that applies to actions for breach of fiduciary duty under [ERISA]." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 184 (2d Cir. 2001); *see also Burke v. Bodewes*, 250 F. Supp. 2d 262, 266 (W.D.N.Y. 2003). "Held together by chewing gum and baling wire," *Caputo*, 267 F.3d at 188, the statute provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part after the earlier of –
>
> > (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> >
> > (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

As interpreted by the Second Circuit in *Caputo*, this statute requires a plaintiff alleging breach of the fiduciary duties imposed by ERISA to commence the lawsuit within six years after the date of the action which constituted the alleged breach, shortened to three years where the plaintiff has "actual knowledge . . . of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo*, 267 F.3d at 193. In addition, the final sentence of section 1113 provides a separate six-year limitations period for "case[s] of fraud or concealment," *i.e.*, "cases in which a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce an employee/beneficiary to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Id.* at 190 (citing *In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 513-16 (3d Cir.2001)). In such cases, the breach of fiduciary duty claim must be commenced no later than six years after the date when the plaintiff "discovers or with due diligence should have discovered the breach . . . ." *Caputo*, 267 F.3d at 190.

Furthermore, *Caputo* holds that in order to take advantage of the six-year "fraud or concealment" statute of limitations, the plaintiff must plead the circumstances constituting the fraud or concealment "with particularity." *Id*. at 191 (quoting Fed. R. Civ. P. 9(b)).

> To satisfy this requirement, a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations. In addition, the complaint should explain how the misrepresentations were fraudulent and "plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."

*Id.* (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987); other citations omitted).

In this case, as outlined above, plaintiffs have set forth several claims based on actions taken by four separate groups of former Trustees and two Plan Managers, most of which–at least on the face of the pleadings–are alleged to have occurred well outside the limitations periods set forth in ERISA section 1113. For example, in Count II plaintiffs allege fiduciary breaches on behalf of the 1994-1998 Trustees, and Santo Scrufari as Plan Manager during that time period, for adopting (and, in Mr. Scrufari's case, benefitting from) a series of five retroactive monthly benefit rate increases, the last of which occurred on August 13, 1998 (*see* Item 1, ¶ 32). For the purposes of this discussion, the court will assume that plaintiffs did not, at any time within three years after August 13, 1998, possess actual knowledge of all facts necessary to understand that the resultant "immediate upsurge in the amounts that the Fund was paying out in benefits" (*id.* at ¶ 33) gave rise to a claim for breach of fiduciary duty (*i.e.*, the duty to preserve the Fund's assets to satisfy future pension claims, or the duty to take impartial account of the interests of all Plan participants and beneficiaries) so as to bring the claims alleged in Count II within the three-year limitations period of section 1113(2). According to the court's interpretation of the statute, plaintiffs therefore had until August 13, 2004–six years after the date of the last action constituting part of the breach–to commence the claims alleged in Count II, absent any allegations of fraud or concealment on behalf of the 1994-1998 Trustees that hindered discovery of the breaches until some point within the six-year period prior to commencement of the action on June 26, 2009.

There are no such allegations of fraud or concealment in Count II. Instead, plaintiffs explain in their opposing brief that, while not specifically pleaded in the complaint, all of the fiduciary breaches alleged flow from a "single scheme" to defraud Plan participants by concealing the funding problem caused by the series of retroactive benefit increases adopted by the 1994-1998 Trustees, "or at least the magnitude and cause thereof . . . ." Item 1, ¶ 24; *see also* Item 16, pp. 15, 22. According to plaintiffs, they remained unaware of the extent of the funding problem until sometime after September 20, 2007, when then-Plan Manager Russell Scrufari delivered copies of actuarial reports and other documents reflecting the Funds' historical market performance to Timothy A. McCarthy, Esq., attorney for the plaintiffs in the *LaScala* case.[6] These documents were provided in response to a subpoena issued to the Funds for the purpose of assisting counsel, and the court, with the task of determining an appropriate measure of damages to be assessed following the finding after trial, appeal, and remand in *LaScala* that Santo Scrufari breached his fiduciary

---

[6]In their brief submitted in opposition to the present motion, plaintiffs assert :

[T]hese 1994 through 1998 retroactive benefit increases are reflected in the plan documents, and it is reasonably clear that the participants and beneficiaries were notified of them, as required by ERISA, through distribution of summary plan descriptions and summaries of material modifications. However, the "1994-1998" Trustees. . . . fraudulently concealed the adverse financial effects that their retroactive benefit increases were having on the Fund from the participants and beneficiaries (thereby precluding the taking of more timely corrective action, through a lawsuit against the Trustees or otherwise). Plaintiffs thus did not learn of the financial damage that had been done to the Fund, year-by-year, until they received the actuarial valuation reports, as part of the package that Russell Scrufari delivered to the plaintiffs in *LaScala* on September 20, 2007.

Item 16, p. 21.

duties as Plan Manager by paying himself unauthorized salary and fringe benefits between March 1989 and October 1992.

This explanation is insufficient to satisfy the requirements of the "fraud or concealment" exception. First of all, as pointed out in *Caputo*, a plaintiff seeking the advantage of the six-year "fraud or concealment" limitations period must commence the action for breach of fiduciary duty within six years of the date when the plaintiff discovers, or with due diligence should have discovered, the breach itself. *Caputo*, 267 F.3d at 190. There is no provision in ERISA section 1113 that could reasonably be interpreted to toll the running of the limitations period until the plaintiff discovers the "magnitude and cause" of the breach.

Secondly, plaintiffs have failed to plead facts and circumstances giving rise to a reasonable inference that any of the 1994-1998 Trustees made a knowing misrepresentation or omission of material fact designed to induce plaintiffs to somehow act to their detriment, or engaged in conduct which hindered the discovery of a breach of fiduciary duty, so as to meet the particularity requirements of Rule 9(b). *See Caputo*, 267 F.3d at 190. Plaintiffs' broad assertion of a general theory regarding defendants' involvement in an ongoing scheme to fraudulently conceal the funding problem caused by the retroactive benefit increases, without articulating (either in the pleadings or in their opposing brief) any factual basis whatsoever for such an assertion, must be deemed insufficient to comply with Rule 9(b)'s pleading requirements.

Plaintiffs are therefore not entitled to the benefit of the "fraud or concealment" discovery rule for any of the claims in the complaint related to the 1994-1998 retroactive benefit increases. Accordingly, the claims in Count II–filed more than six years after the

date of the last action constituting part of the alleged breach (*i.e.*, August 13, 1998)–are barred by the statute of limitations set forth at 29 U.S.C. § 1113(1).

Count I presents a somewhat closer call.  As outlined above, plaintiffs allege in Count I that the 2006-2008 Trustees attempted to deal with the funding problem caused by the 1994-1998 Trustees' retroactive benefit increases by twice reducing the monthly rate for calculating future pension benefit accruals–first, from $113.40 to $105.80, effective July 1, 2004, and second, from $105.80 to $50.00, effective July 1, 2006.  However, there is nothing in the pleadings or related submissions presently before the court to indicate the date on which the last action which constituted a part of the breach might have occurred–*i.e.*, the dates of the Trustees' meetings at which these rate reductions were adopted (as opposed to the dates the reductions took effect)–for the purpose of applying the appropriate limitations period.  Nor are any facts pleaded to suggest that, either at the time the reductions were adopted or at the time they became effective, plaintiffs lacked sufficient knowledge of all material facts necessary to understand that the resultant benefit reductions might give rise to a claim for breach of fiduciary duty.

Indeed, plaintiffs do not plead lack of actual knowledge that the alleged breaches occurred as of the date the challenged benefits reductions were adopted.  Rather, plaintiffs seek the benefit of the "fraud or concealment" exception of the last sentence of 29 U.S.C. § 1113 by alleging that the 2006-2008 Trustees fraudulently concealed the funding problem caused by the series of retroactive benefit increases previously adopted by the 1994-1998 Trustees.  However, as discussed above with respect to Count II, in the absence of any factual allegations regarding conduct or events giving rise to a strong inference of fraud as required by Rule 9(b) and *Caputo*, the general assertion of a scheme

to conceal the funding problem does not bring any of the claims in the complaint related to the 1994-1998 retroactive benefit increases within the "fraud or concealment" exception.

Accordingly, the court must apply the shorter limitations period of section 1113(2), and plaintiffs' first cause of action against the 2006-2008 Trustees can be considered timely only if it was brought within three years after the earliest date on which plaintiffs had actual knowledge of the facts underlying the alleged breach. Clearly, on the face of the complaint filed on June 26, 2009, plaintiffs' claim regarding the benefits reduction adopted by the 2006-2008 Trustees sometime prior to July 1, 2004 is time-barred. With regard to the benefits reduction adopted sometime prior to July 1, 2006, the court's review of the facts pleaded reveals no allegations "consistent with a claim that would not be time-barred." *Harris*, 186 F.3d at 251.

For these reasons, the court finds that the claims alleged in Count I of the complaint are barred by the three-year statute of limitations set forth in 29 U.S.C. § 1113(2).

In Count III, plaintiffs allege that the "December 1993 Trustees" breached their fiduciary duty by virtue of their adoption of pension enhancements for retiree Arthur Marinucci, which took place at a secret meeting held on December 31, 1993, and that these defendants fraudulently concealed this conduct by failing to provide notice or explanation under ERISA's reporting and disclosure requirements. However, plaintiffs assert in their opposing brief that they received notice of the conduct that occurred at the December 31, 1993 meeting by way of the minutes of a Trustee meeting held on May 12, 1994. *See* Item 16, p. 18; *see also Caputo*, 267 F.3d at 190 (six-year period begins to run when plaintiff discovers or with due diligence should have discovered the breach). In addition, as with the prior Counts of the complaint, Count III contains no particularized

allegations of conduct or events giving rise to a strong inference of fraud, as required by Rule 9(b) and *Caputo*.

Accordingly, because the breach of fiduciary duty claim contained in Count III is based on conduct which occurred more than fifteen years before the commencement of this action on June 26, 2009, it is barred by the limitations periods set forth in 29 U.S.C. § 1113.

In Count IV, plaintiffs assert a second claim of breach of fiduciary duty against the 1994-1998 Trustees based on conduct which occurred at a meeting on November 12, 1998, resulting in the forgiveness of a break-in-service for the benefit of defendant Gordon Knapp. Plaintiffs claim that these defendants fraudulently concealed this breach by failing to provide notice or explanation under ERISA's reporting and disclosure requirements.

Like the claims preceding it, Count IV contains no particularized allegations of conduct or events giving rise to a strong inference of fraud, as required by Rule 9(b) and *Caputo*, and there is nothing in the pleadings and submissions before the court to indicate that granting leave to amend the complaint would cure this deficiency. Accordingly, because the breach of fiduciary duty claim contained in Count IV is based on conduct which occurred more than ten years before the commencement of this action on June 26, 2009, it is barred by the limitations periods set forth in 29 U.S.C. § 1113.

Count V is based on conduct which occurred at a meeting on May 18, 2000, resulting in the approval of an early retirement eligibility rule for the benefit of defendant David Fay. Count V contains no allegations of fraud or concealment. In fact, plaintiffs assert in their opposing brief that the Trustees' approval of this eligibility rule was reflected in the Plan documents at the time it was adopted. *See* Item 16, p. 20. Accordingly, the

breach of fiduciary duty claim contained in Count V, commenced more than nine years after the date of the last action which constituted a part of the breach, is barred by the limitations periods set forth in 29 U.S.C. § 1113.

In Count VII, plaintiffs allege that Santo Scrufari and Gordon Knapp colluded in a scheme to fraudulently "weight" their Pension Plan benefit accruals for several years through July 14, 1996, notwithstanding that Mr. Scrufari had been directed to cease this practice at a Trustee meeting in October 1992. Plaintiffs also claim that Mr. Scrufari concealed the fraud by altering his and Mr. Knapp's records, and that the 1994-1998 Trustees breached their fiduciary duty by failing to adequately supervise Mr. Scrufari. To the extent these allegations suffice to bring the claims in Count VII within the "fraud or concealment" limitations period, the public record in *LaScala v. Scrufari* reveals that, with due diligence, plaintiffs should have discovered the acts complained of well before June 26, 2003 (six years prior to the commencement of this action).

In *LaScala*, two of the three plaintiffs in this case (Mr. Janese and Mr. Shakarjian) brought suit in this court in 1993 against Mr. Scrufari, Mr. Knapp, and each of the other individual 1994-1998 Trustees alleging that Mr. Scrufari breached his fiduciary duties by fraudulently taking salary and benefits he was not entitled to, including weighted fringe benefits, between 1985 and 1992. This court presided over several proceedings and extensive motion practice during the protracted litigation of the *LaScala* matter, culminating in a non-jury trial on the merits held before the undersigned in December 2002, at which several witnesses–including plaintiffs' attorney in this case, David Hermann–testified as to their knowledge of the facts and circumstances regarding the history of Mr. Scrufari's conduct before, during, and after his term as Plan Manager, and the compensation and

benefits he received. Based on this level of scrutiny, as reflected in the court's record and published decisions, due diligence on the part of plaintiffs and their counsel–the same individuals directly involved in both *LaScala* and the present action–should certainly have resulted in the discovery of any unauthorized weighting of benefit accruals or alterations of payroll records by Mr. Scrufari well before June 2003.

Accordingly, the court finds that the breach of fiduciary duty claims alleged in Count VII, commenced later than six years after the date when plaintiffs with due diligence should have discovered the breach, are barred by the limitations periods set forth in 29 U.S.C. § 1113.

The claims alleged in Count VIII are subject to the same analysis. To reiterate, plaintiffs allege that Mr. Scrufari breached his fiduciary duties by withdrawing unauthorized Welfare Fund benefits when he retired as Plan Manager in 1996, and that he concealed these withdrawals by reporting them as "Scholarship" or "Health Care" benefits. Plaintiffs also claim that Russell Scrufari and the 1994-1998 Trustees breached their fiduciary duties by approving these withdrawals.

Surely, the level of scrutiny devoted to Mr. Scrufari's conduct and compensation during the long course of litigation in the *LaScala* case should have revealed, in the exercise of due diligence, facts sufficient for plaintiffs and their counsel to have discovered the breaches of duty alleged in Count VIII, at least by the conclusion of the *LaScala* trial in December 2002, and in any event well before June 2003. Accordingly, those claims must be deemed untimely under the limitations periods set forth in 29 U.S.C. § 1113.

Count IX, alleging breaches of fiduciary duty against Gordon Knapp, Russell Scrufari, the 2000 Trustees, and the 1994-1998 Trustees for receipt and approval of

"fraudulent" scholarship benefit payouts between 1997 and 2002, is also untimely. Plaintiffs seek application of the "fraud or concealment" exception by alleging that Russell Scrufari and Mr. Knapp "fraudulently [took] these amounts, and [concealed] that fraud" (Item 1, ¶ 83), without pleading or otherwise articulating any facts, circumstances, or events giving rise to a strong inference that these defendants had the requisite "intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Caputo*, 267 F.3d at 191. There are likewise no facts alleged in the complaint, nor is any explanation provided elsewhere in the submissions on the present motion, to indicate how or when plaintiffs discovered conduct on the part of any of the defendants constituting the breaches, or the fraud, alleged in Count IX. Therefore, the "fraud or concealment" exception is inapplicable, and the six-year limitations period is measured from the date of the last action which constituted a part of the breach–in this case, December 31, 2002.

Accordingly, the claims in Count IX are barred by the limitations period set forth at 29 U.S.C. § 1113(1).

### E.     Count VI: Facial Plausibility

Plaintiffs claim in Count VI that the 2006-2008 Trustees breached their fiduciary duty of loyalty by authorizing an *ad hoc* monthly retirement benefit increase of "another $500 at least" for Mr. Fay at some unspecified time shortly before his retirement on January 1, 2008, resulting in a loss to the Fund of "at least $77,000." Item 1, ¶ 64. Defendants contend that, while the facts alleged in Count VI may be sufficient to avoid dismissal on statute of limitations grounds, those facts are not sufficient to state a claim for relief under ERISA that is "plausible on its face." *Twombly*, 550 U.S. at 570.

Assuming the matters recited in Count VI to be true, and drawing all reasonable inferences in plaintiffs' favor, the court agrees that plaintiffs have failed to set forth sufficient factual content to suggest that the retirement benefit increase authorized for Mr. Fay was not accomplished in accordance with Plan documents, or was otherwise somehow improper. Indeed, given the opportunity in their extensive opposing brief to address these pleading deficiencies, plaintiffs have declined to do so. Nonetheless, it is generally recognized that when a claim is dismissed under Rule 12(b)(6), the usual practice is to grant leave to amend the complaint "when justice so requires." Fed. R. Civ. P 15(a)(2); *see Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *Wong v. HSBC USA, Inc.*, 2010 WL 3154976, at *5 (S.D.N.Y. Aug 9, 2010). However, where the plaintiff is unable to demonstrate that the proposed amendment would survive dismissal, "opportunity to replead is rightfully denied." *Hayden*, 180 F.3d at 53.

Accordingly, the claim set forth in Count VI is dismissed for failure state a facially plausible claim upon which relief can be granted under the ERISA statute. The dismissal of this Count shall be without prejudice to allow plaintiffs the opportunity to demonstrate by written submission how granting leave to amend would correct the pleading deficiencies identified in the discussion above. *See Anwar v. Fairfield Greenwich Ltd.*, ___F. Supp. 2d___, ___, 2010 WL 3341636, at *74 (S.D.N.Y. August 18, 2010).

## F.    The Empire State Carpenters Funds

Finally, defendants move to dismiss the complaint to the extent it seeks relief for breach of fiduciary duty on the part of the Empire State Carpenters Funds. In this regard, ERISA section 409 permits suits for breach of fiduciary duty only against the fiduciary, *see*

29 U.S.C. § 1109(a), and further provides that "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such a breach was committed before he became a fiduciary or after he ceased to be a fiduciary."  29 U.S.C. § 1109(b).

There are no factual allegations in the complaint in this case to suggest that any breach of fiduciary duty occurred after the January 1, 2008 merger of the Local 280 Funds into the Empire State Carpenters Funds.  Accordingly, plaintiffs have failed to state a plausible claim against the Empire State Carpenters Funds for breach of fiduciary duty under ERISA.

## CONCLUSION

For the foregoing reasons, defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) is granted to the extent it seeks dismissal of all claims alleged in Counts I through V and VII through IX, for failure to commence those claims within the limitations periods set forth in  29 U.S.C. § 1113.

Defendants' motion is also granted to the extent it seeks dismissal of the claim alleged in Count VI for failure to state a claim upon which relief can be granted under ERISA.  Dismissal of Count VI only is without prejudice to allow plaintiffs the opportunity to demonstrate by written submission of no more than ten double-spaced pages, to be filed within thirty days of the date of entry of this order, how granting leave to amend would be likely to correct the deficiencies identified above with respect to pleading facts sufficient to state a facially plausible claim for the relief sought in compliance with the procedural requirements for bringing an action in a representative capacity for the benefit of the plan

as a whole.  Defendants shall have the opportunity to file a response to this submission, of equal length.

Finally, defendants' motion is granted to the extent it seeks dismissal of the breach of fiduciary duty claims asserted against the Empire State Carpenters Funds.

The court will reserve its direction of entry of judgment pursuant to Rules 54 and 58 pending its receipt and review of the submissions authorized by this order.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   October   21      , 2010